**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **Lost Trail**, LLC, : | |
|     **Plaintiff**, : | |
| : | |
| v. : | Case No. 3:05cv1948 (JBA) |
| : | |
| **Town of Weston**, : | |
|     **Defendant**. : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 24]**

Plaintiff Lost Trail, LLC ("Lost Trail"), owner of property located at Georgetown Road in Weston, Connecticut, brought this action against the Town of Weston (the "Town"), under 42 U.S.C. § 1983, asserting denial of equal protection (Count One), substantive due process (Count Two), procedural due process (Count Three), and inverse condemnation or regulatory taking of plaintiff's land (Count Four), inverse condemnation or regulatory taking in violation of the Fifth Amendment of the U.S. Constitution and Article First, § 11 of the Connecticut Constitution (Counts Five and Six, respectively), declaratory judgment of property lot lines (Count Seven), and municipal estoppel precluding requirement of subdivision approval (Count Eight).

Lost Trail seeks to develop its land on Georgetown Road in Weston, Connecticut. The Town, however, allegedly refuses to issue zoning or building permits to Lost Trail,

1

on the basis that plaintiff's prior lot line adjustments and two divisions transformed its land from two lots into four lots without subdivision approval.  Lost Trail maintains that no subdivision approval is required.  The Town has moved to dismiss all of Lost Trail's claims as lacking ripeness for judicial review under <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172 (1985).  The Town argues that the first prong of the <u>Williamson</u> test has not been met because Lost Trail has failed to obtain a final decision from the Town body charged with enforcing the disputed subdivision, zoning, and building regulations as to whether and how they will be applied to the Georgetown Road property.  The Town also argues that the second prong of the <u>Williamson</u> test has not been met because Lost Trail has not used the procedures provided by the State of Connecticut to obtain just compensation for the purported taking.  <u>See</u> Def.'s Mem. in Supp. at 1-2 [Doc. # 25].

For the reasons that follow, the Court concludes that Lost Trail's federal claims are unripe and it thus lacks subject matter jurisdiction over them, the Town's motion to dismiss will be granted and, pursuant to 28 U.S.C. § 1367(c), supplemental jurisdiction over Lost Trail's state law claims will be declined.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The land in dispute originally consisted of two lots; a northerly 5.79 acre lot shown on Map # 515 dated April 14, 1947, and a southerly 3.31 acre lot shown on Map # 475 dated March 26, 1946.  Am. Compl. ¶ 7 [Doc. # 22].  Lost Trail purchased both of these lots in November 1997.  Id.  On July 17, 1998, Lost Trail recorded Map # 3438, which shifted 2.117 acres from the northerly parcel to the southerly parcel and .588 acres from the southerly parcel to the northerly parcel.  Id. ¶ 8.  This resulted in a northerly parcel of approximately 4.26 acres and a southerly parcel of approximately  4.84 acres.  On August 18, 1998, Lost Trail then recorded Map # 3440, dividing the northerly parcel into two lots: Parcel 515A containing 2.03 acres and Parcel 515B containing 2.12 acres.  Id. ¶ 9.  At that same time, Lost Trail also recorded Map # 3441, dividing the southerly parcel into two lots: Parcel 475A containing 2.54 acres and Parcel 475B containing 2.26 acres.  Id.  Finally, on August 26, 1998 Lost Trail recorded Map # 3443 and Map # 3444 documenting minor boundary line adjustments to the four lots, each of which remained over two acres in size.  Id. ¶ 10.

Lost Trail asserts that the 1998 adjustment and

3

division of each of the original two lots shown on Maps # 475 and # 515 constituted neither a "subdivision" nor "resubdivision" as defined by statute and, therefore, required no approval of the Weston Planning and Zoning Commission. Id. ¶ 11. Lost Trail also asserts that the "four lots complied with zoning regulations as to lot size, shape, frontage and other relevant requirements." Id. ¶ 34. Lost Trail claims that, prior to recording Maps # 3438, 3440, 3441, 3443 and 3444, it presented the maps to the zoning enforcement officer, the town engineer, and the assistant town attorney, who reviewed and authorized the maps to be filed in the Town of Weston Land Records. Lost Trail asserts that

> [t]he zoning enforcement officer and town engineer signed the map with a notation which states: "The Town Engineer and Code Enforcement Officer hereby attest to the fact that this plan is neither a subdivision nor a resubdivision as defined by the General Statutes of Connecticut and the Town of Weston and may be recorded without prior approval of the Weston Planning and Zoning Commission.

Am. Comp. ¶ 12. In December, 1999, in reliance on this claimed approval of the five maps, Lost Trail mortgaged the property as four lots to the Wilton Bank for $742,500. Id.

The Town now asserts that "the purported lot line revision and subsequent division of the two lots into four

4

lots required subdivision approval" because of the drastic changes in the make-up of the lots. Def. Mem. in Supp. at 3. The Town disputes Lost Trail's interpretation of the notation, maintaining that "each map was stamped by the Town stating that it was not a subdivision or resubdivision as defined by Connecticut General statutes, since no subdivision or resubdivision approval had been granted by the Town." Id. at 2-3. As a result, the Town is requiring Lost Trail to seek a formal determination from the Planning and Zoning Commission as to whether Lost Trail's lot division requires subdivision approval. Id. at 3, 22.

Lost Trail claims that the dispute over the property began around December 16, 1999, when its representative, Robert Walpuck, was summoned to a meeting with various town officials, including the then new First Selectman, the chairman of the Planning and Zoning Commission, and Barry Hawkins, an attorney from the law firm of Shipman & Goodwin who was later appointed as special counsel for the Town.[1] Am. Compl. ¶ 14. Lost Trail asserts that, at the meeting, the First Selectman informed Walpuck "that the Town was

---

[1] Lost Trail objected to the presence of Barry Hawkins at this meeting because it claimed that "he was a law partner of Michael Widland, a member of the Planning and Zoning Commission, with whom Robert Walpuck had a dispute concerning other property in which Walpuck had an interest." Am. Compl. ¶ 15.

5

going to 'shut down' [Lost Trail] and other properties owned by other LLCs in which . . . Walpuck had an interest." Id. ¶ 16. On February 14, 2000, Hawkins informed Lost Trail by letter to its attorney, Joseph McKeon, Jr., that it was required to obtain subdivision approval for the property on Georgetown Road.[2] Id. ¶ 18. The letter also stated that Hawkins had advised "Weston's Zoning Enforcement Officer . . . , the Chairman of the Planning and Zoning Commission, and . . . the Town's Building Official not to issue Mr. Walpuck a building permit, in the event that he attempts to further divide or resubdivide and develop the lots on the . . . Georgetown properties." Am. Compl. ¶ 19.

On March 22, 2000, Hawkins, as special town counsel, informed the Weston Tax Assessor "that the filing of the maps had not changed the number of permitted legal building lots on the . . . Georgetown Road properties." Am Compl. ¶ 21. Lost Trail also claims that in May, 2000 Weston Town Attorney G. Kenneth Bernhard instructed the Tax Assessor to erase the lot lines on the tax assessment map and convert

---

[2] In his letter, Hawkins also informed Walpuck that he would have to obtain subdivision approval for six lots owned by Stone Trails, LLC, an entity in which Walpuck also had an interest. Am Compl. ¶ 18. Those properties are not at issue in this dispute and Stone Trails, LLC is not a party to this suit. The only property that was or has been owned by Lost Trail is the land on Georgetown Road. Id. ¶ 27.

6

the four Georgetown Road lots owned by Lost Trail into one lot, which the Tax Assessor did. Am. Compl. ¶ 22. Lost Trail asserts that "Town officials also told the Wilton Bank that the subject property was being treated as only one lot[,] that it was illegally subdivided[,] and that permits would not be issued by the Town for . . . development of the property." Id. ¶ 31. In March, 2003, Wilton Bank released only one of the four lots from the mortgage and commenced a mortgage foreclosure action against Lost Trail. Id. ¶ 32.

The only permit Lost Trail has applied for is a zoning permit to construct a baseball field on the parcel known as 515A, which was denied.[3] Id. ¶ 33. From this denial under these circumstances, Lost Trail concludes that applying for any other zoning permits would be futile. Id. ¶ 35. It has not sought a certificate of zoning compliance from the Town, viewing the map notations as already reflecting such certification.

Lost Trail claims that, as a result of the Town refusing to recognize the lot line adjustments and division of each original lot on Map # 475 and Map # 515 into two lots (for a total of four lots) as shown Maps # 3440, 3441,

---

[3] Lost Trail asserts that the Town also denied a zoning permit application filed by Walpuck for a Ladder Hill Road lot owned by Stone Trail, LLC, in which Walpuck was also a member.

7

3443, and 3444, it has sustained damage because it has been unable to develop the four lots, the value of the property as four lots has been drastically reduced or destroyed, it has incurred expenses for mortgaging and financing the property, it has been unable to secure release of the remaining lots from its mortgage to Wilton Bank, and it has incurred legal fees and other expenses in defending mortgage and tax foreclosure proceedings against the property. Am. Comp. ¶ 44.

## II. MOTION TO DISMISS STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Motions under Rule 12(b)(1) "technically" should be raised before the filing of a responsive pleading, see Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 n.2 (9th Cir. 2004), but under Rule 12(h)(3), subject matter jurisdiction may be raised at any time: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). "The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that

8

the former may be asserted at any time and need not be responsive to any pleading of the other party.  For purposes of this case, the motions are analytically identical because the only consideration is whether subject matter jurisdiction arises." Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3d Cir. 1992) (internal citation omitted).  Thus, the Court may consider defendant's instant motion.

Where subject matter jurisdiction is questioned, it is the plaintiff's burden, as the party asserting federal jurisdiction, to prove its existence by a preponderance of the evidence not limited to the pleadings themselves. Makarova, 201 F.3d at 113.

**III. RIPENESS**

    **A.    Standards**

        **1.    Regulatory Taking**

The Town challenges Lost Trail's claims as unripe for review in federal court.  The Supreme Court set forth a two-prong ripeness test for takings-type claims in Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985), which involved a challenge to a local planning commission's refusal to approve a subdivision in the form requested by a developer.  First, "a claim that the

application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id. at 186.  Second, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  Id. at 195.

In Williamson, the plaintiff developer's claim was found unripe because the developer "had not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property . . . ."  Id. at 186.  The Supreme Court distinguished between exhaustion requirements for administrative remedies and finality of the administrative action on which judicial review is sought, while recognizing that the policies underlying these concepts are similar:

> the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

Id. at 193; see also Patsy v. Fla. Bd. of Regents, 457 U.S.

496 (1982). While utilization of procedures to ascertain conclusively the final administrative action to be reviewed and whether it will allow the development in the manner requested by the property owner is required for federal court jurisdiction, procedures which are unnecessary to this objective are not required. See, e.g., <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003 (1992) ("special permit" procedures not required). As well, futility may excuse failure to obtain a final decision. <u>Murphy v. New Milford Zoning Comm'n</u>, 402 F.3d 342, 349 (2d Cir. 2005).

Satisfaction of the "final decision" prong of the <u>Williamson</u> test enables the Court to determine whether an owner has been denied all reasonable beneficial use of its property. "Among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations . . . . Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." <u>Williamson</u>, 473 U.S. at 191; <u>see also Southview Assoc., Ltd. v. Bongartz</u>, 980 F.2d 84, 97 (2d Cir. 1992).

The second prong of the <u>Williamson</u> test, requiring that

a property owner seek compensation through procedures provided by the state for doing so, is premised on the rationale that the Fifth Amendment does not proscribe the taking of property, only taking of property without just compensation. Williamson, 473 U.S. at 194 (citing Hodel v. Virginia Surface Mining & Reclamation Assn., 452 U.S. 264, 297 n.40 (1981)). Thus, no constitutional violation occurs until just compensation has been denied. Id. at 195 n.13.

### 2. Equal Protection, Substantive Due Process, and Procedural Due Process Claims

"The ripeness requirement of Williamson, although announced in a taking context, has been extended to equal protection and due process claims asserted in the context of land use challenges." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002); see also Murphy, 403 F.3d at 349 (discussing application of the Williamson finality rule to substantive due process, procedural due process, and equal protection challenges to zoning decisions). It is clear that only this "final decision" prong of the Williamson test applies to the

ripeness of Lost Trail's equal protection claim[4] and substantive due process claim.[5]

**B.   Analysis**

Counts One through Five asserting denial of equal protection, denial of substantive and procedural due process, and inverse condemnation or regulatory taking of plaintiff's land in violation of the Fifth Amendment are thus all tested under the first prong of the Williamson test for ripeness.  The Second Circuit has explicated four purposes undergirding this test:

> First, . . . requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record . . . .  Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a

---

[4] The Town and Lost Trail are in agreement that only the first prong of Williamson applies to equal protection claims. See Pl.'s Mem. in Opp. at 8 [Doc. # 29]; Def.'s Mem. in Supp. at 17.  See Gavlak v. Town of Somers, 267 F. Supp.2d 214, 222 (D. Conn. 2003); see also Wiacek Farms, LLC v. City of Shelton, No. 304CV1635JBA, 2005 WL 2850154, at *3 (D. Conn. Oct. 28, 2005).

[5] The Town and Lost Trail are also in agreement that only the first prong of Williamson applies to substantive due process claims based on arbitrary and capricious conduct. See Pl.'s Mem. in Opp. at 8; Def.'s Mem. in Supp. at 14.  While "a substantive due process claim premised on the theory that a regulation has gone too far is subject to both prongs of the Williamson ripeness test," see Southview, 980 F.2d at 96, because Lost Trail bases its substantive due process claim only on alleged arbitrary and capricious conduct of government officials, see Pl.'s Mem. in Opp. at 15, the second prong of the Williamson test need not be considered in determining whether Lost Trail's substantive due process claim is ripe.

> regulation will be applied to a particular parcel . . . . Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes . . . . Finally, since <u>Williamson County</u>, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

<u>Murphy</u>, 402 F.3d at 348. "In sum, absent a futility or remedial finding, prong-one ripeness reflects the judicial insistence that a federal court know precisely how a property owner may use his land before attempts are made to adjudicate constitutionality of regulations purporting to limit such use." <u>Id.</u> at 349.

To demonstrate futility, Lost Trail argues both exemption from the subdivision approval process and futility of permit applications under the circumstances. Lost Trail relies heavily on the alleged 1998 decision of the former Town Attorney and Zoning Enforcement Officer, as noted on Map # 3443 and Map # 3444, that changes to Lost Trail's property converting two lots, shown on Maps # 475 and # 515, to four lots did not require subdivision approval. <u>See</u> Pl. Mem. in Opp. at 10. Lost Trail asserts that in 2000 the Town reversed this decision and now considers the four lots invalid because they lack subdivision approval from the Planning and Zoning Commission. Lost Trail argues that this

reversal, coupled with specific instructions to various town officials not to issue permits until a proper subdivision application is processed, "sufficiently meets the finality test in the first part of the <u>Williamson</u> decision and places this case squarely under the futility exception to the finality rule."  Pl. Mem. in Opp. at 10.  Lost Trail argues that the Town's denial of its first (and only) permit application underscores the futility of its efforts to utilize Town processes.  "[T]he one time that a permit application was attempted for one of the four lots, namely for a special permit to allow construction of a baseball field, . . . the Planning and Zoning Commission refused to accept the application . . . ."  Pl. Mem. in Opp. at 10.  Lost Trail gives no indication that it appealed the denial of this permit application, or that it ever applied for any other zoning permit, building permit, subdivision approval, or variance with respect to any other portion or use of its property at Georgetown Road.

Lost Trail has failed to demonstrate that the Town has rendered a final decision as to how subdivision or zoning regulations will be applied to Lost Trail's property and whether the Town will prohibit all economically beneficial uses.  That the Town refuses to recognize maps, recorded by Lost Trail and depicting four lots, without formal

15

consideration by the Planning and Zoning Commission through the subdivision approval process does not constitute a final decision as to the outcome of that process. See Southview, 980 F.2d at 98 ("[T]he plaintiff's taking claim was unripe because, although the city commission had rejected one development plan, 'the property owners had not sought approval for any other plan, and it therefore was not clear whether the Commission would deny approval for all uses that would enable the plaintiffs to derive economic benefit from the property.'" (quoting Williamson, 473 U.S. at 187)).

Nor does the Town's alleged prospective refusal to issue zoning or building permits until subdivision approval is obtained for the four lots demonstrate either a final decision or futility exempting Lost Trail from the final decision requirement. Lost Trail's futility argument hinges largely on what it deems a "purely legal question, namely whether the [Georgetown] lots exist as a matter of law as [four] separate parcels" under Connecticut statutory law and case law. Pl. Mem. in Opp. at 11. Regardless of the merit to Lost Trail's legal argument, it has never been presented to the Planning and Zoning Commission for its formal consideration and thus Lost Trail has not "obtained a final decision regarding the application of the zoning ordinance *and* subdivision regulations to its property . . . ."

Williamson, 473 U.S. at 186 (emphasis added).  Moreover, even if Lost Trail's property were deemed to be comprised of four lots, their development requires zoning and building permits, and the Town's denial of Lost Trail's single prior permit application to construct a baseball field is far from a final decision by the Town regarding approved uses of the Georgetown Road land and whether the Town will deny Lost Trail all economically beneficial use of its land.  Lost Trail has not appealed the denial of its initial permit application and has never submitted any subdivision, zoning, or building permit applications to derive economic benefit from the land.

Lost Trail's argument that the Town has issued a final decision by its refusal to recognize the Georgetown Road land as four separate lots, manifested by Lost Trail's unsuccessful requests that the Town's attorneys and Assessor change the Town's position regarding the number and validity of the Georgetown lots, is unavailing.  See Pl. Mem. in Opp. at 10.  Lost Trail has failed to seek any relief from the Zoning Board of Appeals, which "will typically be the venue from which a final, definitive decision will emanate." Murphy, 402 F.3d at 353.  "Until this variance and appeals process is exhausted and a final, definitive decision from local zoning authorities is rendered, this dispute remains a

matter of unique local import over which we lack jurisdiction." Id. at 354.

Thus, because Lost Trail has not satisfied the final decision requirement of Williamson, each of its claims in Counts One through Five are not yet ripe for adjudication and must be dismissed.

## IV. State Law Claims

Having dismissed plaintiff's federal claims for lack of subject matter jurisdiction, the Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over plaintiff's remaining state law claims asserting inverse condemnation or regulatory taking in violation of the Connecticut Constitution (Count Six), declaratory judgment of property lines (Count Seven), and municipal estoppel (Count Eight). See Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 103 (2d Cir. 1998) ("28 U.S.C. § 1367(c)(3) . . . permits a district court, in its discretion, to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims. Further, the Supreme Court, in Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988), announced that when all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining

state law claims and dismissing them without prejudice.").

## VI. Conclusion

For the foregoing reasons, the Town's Motion to Dismiss [Doc. # 24] is GRANTED and the Clerk is directed to remand this case to the Connecticut Superior Court for the Judicial District of Stamford / Norwalk.

                               IT IS SO ORDERED

                               _____/s/_____
                               Janet Bond Arterton
                               United States District Judge

**Dated at New Haven, Connecticut this 19th day of April, 2007**.